UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>LENROY MCLEAN,<br><br>      Defendant. | No. 08-cr-789-7 (RJS) |
| LENROY MCLEAN,<br><br>      Petitioner,<br><br>-v-<br><br>UNITED STATES OF AMERICA<br><br>      Respondent. | No. 12-cv-1954 (RJS)<br><br>MEMORANDUM OPINION & ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

  Before the Court are (1) Petitioner Lenroy McLean's undocketed pro se letter request, dated December 7, 2020 and attached to this Memorandum Opinion and Order, for the Court to "intervene" and provide him with the "Pen register and Trap and Trace" warrants in his criminal case (the "McLean Letter"); (2) McLean's pro se "Motion for Relief Under Rule 60(b)(4)" (Civ. Doc. No. 52)[1] (capitalization altered), and request to lift the stay on the Court's consideration of such motion (Civ. Doc. No. 56), which McLean had originally sought while he was in the process of transferring between prison facilities (Civ. Doc. No. 53); (3) McLean's July 9, 2021 request for "a couple subpoena[s]" of undisclosed parties for an undisclosed purpose (Civ. Doc. No. 57);

---

[1] Citations to the docket in McLean's civil proceeding, *United States v. McLean*, No. 12-cv-1954 (RJS), are designated by "Civ. Doc. No." Citations to the docket in the underlying criminal proceeding, *United States v. McLean*, No. 08-cr-789-7 (RJS), are indicated by "Crim. Doc. No."

(4) McLean's motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1) (Crim. Doc. No. 432); (5) McLean's motion for a court order granting him additional access to the law library at FCI Beaumont, where he is currently housed, and directing the prison to facilitate communication with his court-appointed counsel (Crim. Doc. No. 456); and (6) McLean's motion, pursuant to 18 U.S.C. § 3504, for an order directing the government to admit or deny whether it engaged in unlawful surveillance of him prior to his arrest, along with a corresponding request to seal this motion (Civ. Doc. Nos. 59, 60). Because the Court previously addressed McLean's requests for increased access to the law library and more readily accessible communication with his counsel by directing the government to coordinate with defense counsel and ensure that McLean has appropriate access to legal resources, those requests are DENIED AS MOOT. (Crim. Doc., Minute Entry for Proceeding of July 21, 2021; *see also* Crim. Doc. No. 459 at 1 (ordering the government and defense counsel to submit a letter "addressing the failure of the Bureau of Prisons to schedule the conference between [McLean] and his counsel that the Court [had] previously ordered").) Furthermore, because the Court never granted a stay with respect to its consideration of McLean's Rule 60 motion, McLean's request to lift the stay is also DENIED AS MOOT. For the reasons set forth below, McLean's request to be furnished with the warrants in his criminal case, request for subpoenas, Rule 60 motion, motion for compassionate release, motion pursuant to section 3504 for an order requiring the government to admit or deny its use of warrantless surveillance in this case, and request to seal the section 3504 motion are DENIED.

## I. Background

The Court has previously recounted the facts surrounding McLean's conviction in some detail, *see McLean v. United States*, Nos. 12-cv-1954 (RJS), 08-cr-789 (RJS), 2016 WL 3910664, at *2–3 (S.D.N.Y. July 13, 2016), and so will reference only those facts necessary to resolve the pending motions.

In 2007 and 2008, McLean "participated in a conspiracy to distribute hundreds of kilograms of cocaine" throughout the New York metropolitan area. *Id.* at *2. As part of that conspiracy, McLean and a co-conspirator supervised the distribution cells where cocaine was weighed and packaged; the two men also provided security, or "muscle," for the leaders of the drug organization. *Id.*

On November 5, 2008, a grand jury in the Southern District of New York returned an indictment charging McLean and others with participating in a conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. (Crim. Doc. No. 40.) On February 18, 2009, the grand jury returned a second superseding indictment that reasserted the narcotics conspiracy and added a second count charging one of McLean's co-conspirators with using and possessing a firearm in furtherance of the drug conspiracy in violation of 18 U.S.C. § 924(c)(1)(A). (Crim. Doc. No. 70.)

On March 16, 2009, trial commenced on the second superseding indictment against McLean and his co-defendant, Milton Samuels; the jury ultimately returned a guilty verdict against both defendants on all counts charged. *See McLean,* 2016 WL 3910664, at *2. On March 10, 2010, the Court sentenced McLean to 228 months' imprisonment and subsequently ordered that McLean and his co-conspirator forfeit $6,000,000 in narcotics proceeds. *Id.* at *3.

In imposing McLean's sentence, which was substantially below the sentencing Guidelines range of 324 to 405 months (Crim. Doc. No. 198 at 28), the Court cited several factors supporting a lengthy prison term, including McLean's lack of remorse (*id.* at 45–46); his substantial criminal history at the time of his sentencing, including a prior eleven-year sentence for a violent crime (*id.* at 42); and the seriousness of the conduct in this case, which involved the importation of over 150 kilograms of cocaine into the United States (*id.* at 46). Nonetheless, in imposing a below-Guidelines sentence, the Court also cited McLean's family ties and his less-significant role

3

in the conspiracy than that of some of his co-defendants. (Crim. Doc. No. 198 at 42, 46.) McLean appealed his conviction and sentence, and the Second Circuit affirmed. *See United States v. Sanchez*, 419 F. App'x 27, 33 (2d Cir. 2011).

In the eleven years since the Second Circuit affirmed McLean's conviction and sentence, McLean has mounted a host of challenges to his underlying conviction. On July 13, 2016, the Court denied McLean's first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, which was premised on the ineffective assistance of McLean's trial counsel. *McLean*, 2016 WL 3910664, at *4–8. In the same opinion, the Court denied McLean's motion to require the government "to specifically delineate all instances of electronic interception [of McLean's and his co-conspirators' communications] pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings and to expand the record pursuant to Rule 7." *Id.* at *8 (citation and quotation marks omitted). The Court concluded that McLean failed to offer "any justification or facts to show good cause for his request," so additional discovery was not warranted. *Id.*

McLean appealed the Court's habeas decision, and the Second Circuit dismissed his appeal because he did "not 'ma[k]e a substantial showing of the denial of a constitutional right.'" *McLean v. United States*, No. 16-2702 (ECF No. 47) (2d Cir. Dec. 5, 2016) (quoting 28 U.S.C. § 2253(c)). McLean subsequently brought a successive habeas petition challenging his conviction on the ground that the government allegedly failed to turn over two wiretap affidavits to the defense before trial. (Civ. Doc. No. 25.) The Court dismissed the petition on May 8, 2018 (Civ. Doc. No. 40) and denied McLean's motion for reconsideration on November 5, 2019 (Civ. Doc. No. 47). The Second Circuit dismissed McLean's appeal from that decision on July 8, 2020. (Civ. Doc. No. 51).

McLean next brought a motion to reduce his sentence in light of the United States Sentencing Commission's 2014 reduction in the Guidelines range for drug offenses. (Crim. Doc.

4

No. 386.)  The Court denied that motion on April 24, 2019, explaining that because it had sentenced McLean to a term of imprisonment below even the new Guidelines range, McLean was not eligible for a resentencing.  (Crim. Doc. No. 389 at 2.)  The Second Circuit dismissed McLean's appeal of the Court's order.  (Crim. Doc. No. 405.)

In the summer of 2020, as the COVID-19 pandemic ravaged the United States, McLean requested that the Court appoint an attorney to assist him in filing a motion for compassionate release pursuant to the First Step Act of 2018, *see* 18 U.S.C. § 3582(c)(1).  (Crim. Doc. No. 425.)  The Court granted McLean's motion and, on August 5, 2020, appointed Bobbi C. Sternheim from the Court's Criminal Justice Act panel to represent him (Crim. Doc. No. 429); McLean nonetheless filed a pro se motion for compassionate release less than a week after submitting his request that counsel be appointed.  (Crim. Doc. No. 432.)

On February 19, 2021, McLean separately filed a pro se Rule 60 motion for reconsideration of the Court's April 2019 denial of his resentencing motion, contending that he had received ineffective assistance of counsel at trial and that the wiretap used to gather evidence against him was faulty for various reasons.  (Civ. Doc. No. 52 at 2–4.)  He sought to stay the Court's consideration of this motion while he was transferred to a new prison facility (Civ. Doc. No. 53), and then requested that the stay be lifted once his transfer was complete (Civ. Doc No. 56).

At a conference the Court conducted over Zoom on July 21, 2021, McLean indicated that he wished to supplement his pro se motion for compassionate release with a counseled motion for compassionate release, to be filed by Ms. Sternheim.  (Crim. Doc., Minute Entry for Proceeding of July 21, 2021.)  The motion was fully briefed on October 28, 2021.  (Crim. Doc. No. 470.)  At present, McLean remains in custody and, according to the BOP website, is expected to be released on March 21, 2025.  (Crim. Doc. No. 465 at 4.)

Finally, in a letter filed on March 14, 2022, McLean requests that the Court compel the government to affirm or deny whether it engaged in illegal surveillance of him in connection with this case. (Civ. Doc. No. 59.) McLean also requests that his motion be maintained under seal. (Civ. Doc. No. 60.)

## II.  McLean's Letter Requests

The Court has received several letter requests from McLean, primarily seeking documents related to his criminal case. (*See* Crim. Doc. Nos. 439, 446.) For purposes of this Memorandum Opinion and Order, the requests fall into two categories. First, McLean has requested that the Court "intervene" and assist him in obtaining "the 'Pen register and Trap and Trace' warrants" in his criminal case "because the docket sheet does not have any entry of the 'pen register' warrants in this case and . . . the [g]overnment has been ignoring [his] request." (McLean Letter at 1.) Second, McLean has requested "a couple subpoena[s]," though he does not indicate whom he plans to serve or what documents or information he intends to seek. (Civ. Doc. No. 57.) Although McLean does not identify the procedural mechanism through which he seeks such relief, the Court construes the requests as seeking discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings (the "2255 Rules").

McLean's letter requests can be denied for the straightforward reason that he has no pending section 2255 motion, and he identifies no other mechanism in which to ground this request. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("There is no pre-motion discovery in a Section 2255 case, as there is in summary judgment proceedings in a civil case.").

But the Court would deny McLean's Rule 6 request on the merits even if there were a pending section 2255 motion. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course," *Bracy v. Gramley*, 520 U.S. 899, 904 (1997), and must in fact show "good cause" justifying the request, *id.* at 901; *see also Lewal v.*

6

*United States*, 152 F.3d 919, 1998 WL 425977, at *2 (2d Cir. June 9, 1998) (summary order) (same).  To show good cause, a petitioner must present "specific allegations" that give the Court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."  *Bracy*, 520 U.S. at 908–09 (citation omitted) (alterations adopted).  Moreover, "Rule 6 does not license a petitioner to engage in a fishing expedition by seeking documents merely to determine whether the requested items contain any grounds that might support his petition."  *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (citation and quotation marks omitted).

  McLean's request for the pen register and trap and trace warrants does not offer any reason for believing that the documents he seeks will materially advance a specific claim of error or that he will be able to develop facts demonstrating that he is entitled to relief.  (*See* McLean Letter at 1); *see also Bracy*, 520 U.S. at 909.  As discussed below, to the extent that McLean seeks to challenge the integrity of his conviction using those records, any such challenge is procedurally barred, absent authorization from the Second Circuit, as a successive habeas petition.  *See* 28 U.S.C. § 2255(h).  Moreover, McLean's repeated requests for documents about all facets of his case make clear that he is simply engaged in a "fishing expedition" for "any grounds that might support" a renewed challenge to his conviction.  *Pizzuti*, 809 F. Supp. 2d at 176 (internal quotation marks omitted).  Because McLean's letter has not set forth any specific challenges in connection with his "'Pen register and Trap and Trace' warrants" (McLean Letter at 1), or any reason that these documents would be relevant to his habeas petition, he has not shown "good cause."

  McLean's request for subpoenas is even more barebones.  He does not indicate how many subpoenas he seeks, the parties at which he will direct them, or the materials and information he wishes to discover.  As such, his letter request for the pen register and trap and trace warrants and his request for subpoenas are DENIED.

### III.  McLean's Rule 60 Motion

In a motion filed February 19, 2021, McLean seeks to "re-open his § 2255 proceeding" pursuant to Federal Rule of Civil Procedure 60(b)(4).  (Civ. Doc. No. 52 at 1.)  Attempting to avoid the stringent restrictions on successive collateral attacks upon a conviction, *see* 28 U.S.C. § 2255(h), McLean contends that he "is not attacking his sentence or conviction," but instead is "seek[ing] to re-open his § 2255 proceeding by demonstrating a defect in the integrity of his previous § 2255 ruling which was denied."  (Civ. Doc. No. 52 at 2.)  The substance of McLean's arguments, however, relates to supposed errors affecting his underlying criminal conviction, not purported errors in the Court's denial of his habeas petition.  For instance, McLean asserts four "claims" that he wishes "to present before this [C]ourt to hear and adjudicate . . . on their merits," (*id.* at 1), but three of those four claims challenge the integrity of a wiretap used to intercept a call between McLean and one of his co-conspirators – claims he has not previously raised – and the final claim contends that McLean's trial counsel "was ineffective by failing to move to suppress wiretaps and evidence . . . without consult[ing] with Mc[L]ean" (*id.* at 2–4).

Thus, while styled as a motion to reopen his habeas proceeding pursuant to Rule 60, McLean's motion is actually "a successive habeas petition in disguise," doing nothing more than collaterally attacking his conviction.  *Musa v. United States*, 502 F. Supp. 3d 803, 816 (S.D.N.Y. 2020).  Typically, a successive habeas petition must be transferred to "the appropriate court of appeals" so that that court can determine whether to permit the petitioner to proceed under the narrow set of rules that permit second or successive habeas petitions.  28 U.S.C. § 2255(h). The Second Circuit, however, has spoken more specifically to the circumstances the Court now encounters, in which a motion labeled as one under Rule 60 principally attacks the underlying conviction rather than "the integrity of a previous habeas proceeding."  *Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004) (emphasis omitted).  When a Rule 60 motion "attacks the underlying

8

conviction," a district court retains the option to "treat the . . . motion as 'a second or successive' habeas petition" and "transfer[] [it] to th[e] [Second Circuit] for possible certification," but it may also "simply deny the portion of the motion attacking the underlying conviction as beyond the scope of Rule 60(b)." *Id.* (emphasis, citation, and quotation marks omitted). Of course, a Rule 60(b) motion that genuinely attacks the prior habeas petition but is without merit "should simply be denied, as would any other Rule 60(b) motion that lacks merit." *Id.*

Following *Harris*, the Court will deny McLean's motion as beyond the scope of Rule 60(b) and, alternatively, without merit. McLean did not raise during his habeas proceeding any of the arguments he now presses. Nor is any of these arguments based on "newly discovered evidence" that might otherwise justify granting Rule 60(b) reconsideration. Fed. R. Civ. P. 60(b)(2). Instead, these arguments are all geared toward alleging defects in his underlying criminal proceeding, placing them beyond the scope of what can be considered on a Rule 60(b) motion. *See Harris*, 367 F.3d at 82. Alternatively, to the extent that McLean's arguments can be read to attack his habeas proceedings, they are meritless because he failed to raise these arguments in those proceedings. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir. 1994) ("An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief."); *see also Gitten v. United States*, Nos. 00-cv-9100 (DLC), 99-cr-380 (DLC), 2002 WL 662883, at *3 (S.D.N.Y. Apr. 23, 2002) ("The Court did not act in a manner inconsistent with due process of law by failing to consider arguments that [the defendant] did not raise in support of his habeas petition."). Accordingly, the Court alternatively denies McLean's Rule 60 motion as "without merit." *Harris*, 367 F.3d at 82.

9

### IV. McLean's Motion for Compassionate Release[2]

Pursuant to the procedures outlined in the First Step Act, the Court may "reduce" a defendant's sentence after imposing it when (1) "extraordinary and compelling reasons warrant such a reduction," and (2) the reduction is consistent with "the factors set forth in [18 U.S.C. § 3553(a)]" and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1), (2). The Court must determine that both criteria are met before it may grant compassionate release; "if a district court determines that one of those conditions is lacking, it need not address the remaining one[]." *United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021).

McLean asserts that "a combination of factors . . . together[]" constitute "'exceptional and compelling reasons' for early release," including "his serious medical conditions," the hardships and risks imposed by the COVID-19 pandemic, his age (he is 49 years old), "the percentage of his sentence he has already served," the unexpectedly harsh conditions under which he is serving his sentence, evidence of his rehabilitation since he has been incarcerated, and his viable release plan. (Crim. Doc. No. 464 at 1.) The Court need not determine whether these constitute extraordinary and compelling circumstances, however, because even assuming that they do, release would be inconsistent with the section 3553(a) sentencing factors and is thus unmerited.

Section 3553(a) requires sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and to ensure that the sentence imposed "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, . . . provide[s] just punishment for the offense; . . . afford[s] adequate deterrence to criminal conduct; . . . protect[s] the public from further crimes of the defendant; and . . . provide[s] the

---

[2] In ruling on the motion, the Court considers and relies on McLean's pro se motion for compassionate release (Crim. Doc. No. 432), his supplemental counseled memorandum in favor of compassionate release (Crim. Doc. No. 464), the government's memorandum in opposition to compassionate release (Crim. Doc. No. 465), and McLean's letter reply in support of compassionate release (Crim. Doc. No. 470).

10

defendant with needed educational or vocational training, medical care, or other correctional treatment." *Id.* § 3553(a)(2)(A)–(D). As the Court found with respect to McLean's co-defendant Roberto Sanchez, the section 3553(a) factors "strongly disfavor compassionate release. In particular, (1) 'the nature and circumstances of the offense,' (2) 'the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,' and (3) 'the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct,' all outweigh the facts that might otherwise support [McLean's] release." *United States v. Sanchez*, No. 08-cr-789-1 (RJS), 2020 WL 4742916, at *3 (S.D.N.Y. June 17, 2020) (quoting 18 U.S.C. § 3553(a)).

McLean engaged in a conspiracy to traffic massive quantities of cocaine, a deadly and destructive drug, and to this day has not taken responsibility or expressed remorse for his actions. He was aware that firearms were used in the operation, for which he received a two-level enhancement at sentencing in 2010. (Doc. No. 198 at 23.) The Court nonetheless imposed a sentence nearly 100 months below the low end of the Guidelines range. A further reduction now – to time served – would "undermine [the sentence's] deterrent effect" and fail to adequately reflect the seriousness of the offense and promote respect for the law, which McLean casually and unrepentantly flouted. *Sanchez*, 2020 WL 4742916, at *3. McLean's extensive criminal history – including a prior violent offense and lengthy period of incarceration (*see* Crim. Doc. No. 198 at 42) – also indicates a continuing need "to protect the public from further crimes," 18 U.S.C. § 3553(a)(1)(C), notwithstanding the rehabilitative strides he has apparently made in prison, such as obtaining a barbering certificate and working toward an electrician's license. (Crim. Doc. No. 464 at 5.[3]) The fact that the Court denied a substantially similar request from McLean's

---

[3] The import of these rehabilitative efforts is diminished by McLean's immigration status, which will prevent him

11

co-defendant, Roberto Sanchez, also counsels against granting McLean's request here. *See* 18 U.S.C. § 3553(a)(6) (providing that, in imposing a sentence, a court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").[4]

In short, the Court is convinced that granting McLean's motion for compassionate release would disserve the many objectives that the Court articulated when it imposed McLean's sentence in 2010. The motion is accordingly DENIED.

## V. McLean's Request for Increased Access to the Law Library and to Communication with Counsel

On June 30, 2021, McLean moved for a court order directing the BOP and FCI Beaumont to provide him with additional time in the law library, as well as to facilitate communications with his appointed counsel, Ms. Sternheim. (Crim. Doc. No. 456.) At its July 21, 2021 conference, the Court directed the government to ensure that the BOP and FCI Beaumont were facilitating communication between McLean and his counsel and granting him appropriate access to the law library. (*See* Crim. Doc., Minute Entry for Proceeding of July 21, 2021.) McLean and his counsel continued to struggle to communicate, which the Court addressed by granting extensions as appropriate for submissions in connection with McLean's compassionate release motion. (*See* Crim. Doc. Nos. 463, 469.) Since then, the Court has been apprised of no further issues with

---

from lawfully working in – and likely result in his removal from – the United States following his sentence.

[4] The Court has also considered McLean's medical conditions in connection with the section 3553(a) factors. *See* 18 U.S.C. § 3553(a)(2)(D) (obliging sentencing courts to consider the imperative "to provide the defendant with needed . . . medical care"). McLean's medical conditions are generally monitored and well controlled while he is in custody, however. His gastrointestinal issues are mild and treatable. (Crim Doc. No. 464, Ex. B at 5–6.) His back and neck issues are also mild and common, not extraordinary, in people McLean's age. (*Id.*, Ex. B at 3, 5–6.) The knee pain McLean complains of did not result in an abnormal exam. (*Id.*, Ex. B at 4.) McLean admits that his asthma is controlled with inhalers (Crim. Doc. No. 464 at 2; *see also id.*, Ex. B at 4), and his urological issues are apparently due at least in part to user error with medication.

respect to McLean's access to the law library. Because the Court has directed the government to ensure McLean has appropriate access to his counsel and to the law library, his requests for the same are DENIED AS MOOT, without prejudice to McLean's renewing these requests if additional complications arise in the future.

### VI. McLean's Motion for an Order Directing the Government to Admit or Deny Its Use of Unlawful Surveillance

Relying on 18 U.S.C. § 3504(a)(1), McLean seeks "to compel the [g]overnment [t]o [a]ffirm or [d]eny the existence of any warrantless electronic surveillance or use of real time cell site data, meta data, . . . or other [such] device," as well as to "[a]dmit or [d]eny that warrantless surveillance was used by the Department of Justice or any [s]tate agency working in coop[e]ration with [g]overnment agents . . . to establish probable cause or as evidence to try [McLean] or to support [his] sentence." Civ. Doc. No. 59 at 1.

Section 3504(a)(1) provides that, "upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act." Here, there is every reason to believe that McLean's motion – made more than a dozen years after his trial – is untimely. *See United States v. Yanagita*, 552 F.2d 940, 943 (2d Cir. 1977) (requiring in the section 3504 context "a timely claim" that "may be waived" if not made promptly).[5]

But even if it could be argued that McLean's motion is procedurally proper, McLean does not offer a "colorable" basis to think that the government might have engaged in illegal

---

[5] Indeed, it appears that McLean's section 3504 motion is an attempt to evade the procedural bar on second or successive habeas motions, *see* 28 U.S.C. § 2244, 2255(h); *Muniz v. United States*, 236 F.3d 122, 125 (2d Cir. 2001), given that McLean has already brought a successive habeas petition in which he argued that the government failed to turn over two wiretap affidavits before trial (Civ. Doc. No. 25 at 1–2). The Court dismissed that petition (Civ. Doc. No. 40) and denied a subsequent motion for reconsideration (Civ. Doc. No. 47), and the Second Circuit dismissed McLean's appeal from that decision (Civ. Doc. No. 51).

surveillance, which provides an independent basis for denying his motion. *Id.* ("Although the claim [under section 3504] need not be particularized, it may not be based upon mere suspicion but must at least appear to have a 'colorable' basis before it may function to trigger the government's obligation to respond.") (citation omitted). McLean cites various facts, such as agents' references in documents to wiretaps and pen registers, suggesting that the government conducted surveillance on him and his drug operation. (*See* Civ. Doc. No. 59.) But he makes no colorable allegation in his motion that any of this surveillance was *illegal* – a prerequisite for the government to be required to respond. *See United States v. Dien*, 598 F.2d 743, 746 (2d Cir. 1979) ("In the absence of any substantial support for the claim of illegality, the assertion must be deemed a frivolous one which triggered no obligation under 18 U.S.C. § 3504."). Accordingly, the Court denies McLean's motion.

Finally, McLean requests that the Court accept his section 3504 motion under seal. (Civ. Doc. No. 60.) "[T]here is a presumption favoring [public] access to judicial records." *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995). Though the presumption can be overcome, *id.* at 146–47, McLean offers no reason that the presumption should be overcome with respect to this motion. Thus, the unrebutted presumption of open access to judicial records requires denying McLean's barebones request to maintain his section 3504 motion under seal.

\*   \*   \*

For the foregoing reasons, McLean's letter request, request for subpoenas, Rule 60(b)(4) motion, motion for compassionate release, motion to compel the government to affirm or deny the use of unlawful surveillance, and request to maintain such motion to compel under seal are DENIED, and his requests to lift the stay on the Court's consideration of his motion for compassionate release and for a court order granting increased time in the FCI Beaumont law library and communication with counsel are DENIED AS MOOT.

In addition, because McLean has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability with respect to its denial of McLean's Rule 60 motion, *see Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal of the Court's denial of McLean's Rule 60 motion would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from that portion of this Memorandum Opinion and Order would not be taken in good faith and, therefore, McLean may not proceed in forma pauperis with respect to it, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to terminate the motions pending at Doc. Nos. 432 and 456 of 08-cr-789-7 and pending at Doc. Nos. 52, 56, 59, and 60 of 12-cv-1954. Because McLean is proceeding pro se with respect to some of the motions that the Court has resolved herein, the Clerk of Court is respectfully directed to mail a copy of this Memorandum Opinion and Order to McLean and note that mailing on the public docket.

SO ORDERED.

Dated:   April 15, 2022
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

TO: Hon. Richard J. Sullivan
    United States District Court
    Southern District of New York
    500 Pearl Street
    New York, New York 10007

FR: Mclean Lenroy 61524-054
    Giles W. Dalby C.I.
    805 North ave F
    Post, Tx 79356

RE: United States v Roberto Sanchez et al. 08-CR-789(RJS)...

Good Day Your Honor

    I would like to inquiry about the whereabouts of the "Pen register and Trap and Trace" warrants in the above reference. Upon information and belief, the federal statute dealing with pen register and trap and trace devices, 18 U.S.C § 3127, provides that "the term 'pen register' means a device or process which records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted. I have made several attempt to retrieved these 'pen register' from the Government and my former counsels (Russo, Seidler and Touger) assumming that these records had pass on to them such was a futile attempted. I would like to asked that this court intervene, because the docket sheet does not have any entry of the 'pen register' warrants in this case and former counsels to included the Government has been ignoring my request. I will await your reponse in the above reference matter, thanking you in advance for your time and consideration given to this matter.

Date: 12-7-2020

Respectfully Submitted,

Lenroy Mclean 61524-054


CC file

Alan Seidler
Jason Russo
David Touger

Lenroy Mclean 61524-054
Giles W. Dalby Correctional facility
805 North ave F
Post, Texas 79356

LUBBOCK TX 79
7 DEC 2020 PM 2 L

RECEIVED
2020 DEC 10 PM 3:20
CLERK'S OFFICE
S.D.N.Y.



Clerk of the Court
United States District Court
500 Pearl Street
New York, New York 10007

Criminal       JKR
Docketing

LEGAL MAIL

10007-131608

LEGAL MAIL